# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| Randall S. Goulding, as assignee of the original Plaintiff, Securities Counselors, Inc. ) ) ) ) Plaintiff, ) ) v. ) ) Osceola Gold, Inc., ) a Delaware corporation, ) ) Pizz Inc., ) a Nevada corporation, ) Defendants. ) | Case No. 1:16-cv-04860<br><br>Judge John Z. Lee<br><br>Magistrate Judge Sidney I. Schenkier |

## FIRST AMENDED COMPLAINT

Plaintiff, Randall S. Goulding, as assignee of the original Plaintiff, Securities Counselors, Inc. (Randall Goulding and Securities Counselors, Inc. are together hereinafter referred to as "SCI"), for the first amended complaint against Osceola Gold, Inc., a publicly traded Delaware Corporation ("Osceola Gold"), and against Pizz Inc., a Nevada corporation, jointly and severally, for nonpayment of legal fees, states:

### The Parties

1. Randall S. Goulding, a principal and shareholder of Securities Counselors, Inc., as assignee of the original Plaintiff, resides in Deerfield, Illinois and at all relevant times, partner and associate attorneys, licensed to practice law in Illinois, by the Illinois Supreme Court, engaging in the business of providing legal and professional consulting services to its clients, and has its principal office in Deerfield, Illinois.

2. Securities Counselors, Inc., as assignor to the substitute party plaintiff, is an Illinois professional corporation, organized and existing under the laws of the state of Illinois, engaging in the business of providing legal and professional consulting services to its clients, with its principal

office in Deerfield, Illinois, and at all relevant times practicing through partners and associate attorneys, principally in Deerfield Illinois, and has been licensed to practice law in Illinois.

3. Defendant Osceola Gold, Inc. (formerly known as PhyHealth Corporation a publicly traded company) is a corporation organized in the state of Delaware, conducting business in various states within the United States and outside the United States, purporting to be in the business of mining precious metals, with offices in the state of Ohio.

4. Defendant Pizz Inc. is a corporation organized in the state of Nevada, conducting business in various states within the United States and outside the United States, purporting to be in the business of mining precious metals, with offices in the state of Nevada.

## Jurisdiction and Venue

5. This Court has *in personam* jurisdiction over each defendant because both defendants consented to jurisdiction in Illinois by virtue of the April 28, 2015 attorney-client agreement (the "Attorney-Client Agreement", Exhibit A, and by virtue of the July 8, 2015 Mining Rights/Stock Purchase Agreement Incident to Reorganization (the "Mining Agreement" attached hereto as Exhibit B) and:

    a. Each agreement (Exhibits A and B) pertaining to the retention of SCI and the services to be rendered, became final and effective in Illinois, when SCI agreed to provide the subject services.

    b. All parties agreed that "Venue for any action brought under [the] Agreement shall be in the appropriate court in Cook County or Lake County, Illinois."

    c. Most of the services were performed in Illinois.

    d. The breach of contract occurred such that the adverse effects and damages were experienced in Illinois.

    e. And the complained of conduct affected interests within Illinois.

6. Federal subject matter jurisdiction also exists under 28 U.S.C §1332(a) because complete diversity of citizenship exists among adverse parties and the monetary relief sought and the value of the relief sought each exceed $75,000.

7. Venue is proper under 28 U.S.C. §1391(a) since a substantial part of the events giving rise to the claims asserted herein occurred here and both defendants are subject to the court's personal jurisdiction with respect to such action.

## Underlying Facts

8. On or about February 1, 2015, the parties agreed that SCI would provide services to the Defendants, pursuant to the Attorney-Client Agreement, which agreement was fully executed on or about April 28, 2015 (Exhibit A), pursuant to which SCI agreed to perform services for Osceola Gold and Pizz Inc. (hereinafter referred to collectively as the "Defendants") and the Defendants agreed to pay SCI $87,500 for certain specified services including the facilitation of control of a public entity (the "Specified Services"), plus costs, and to pay for additional services at the rate of $395 per hour of attorney time.

9. The Attorney-Client Agreement expressly provided that, and the subject legal services included "general corporate and securities matters relating to acquisition of an appropriate shell vehicle for the target entity to become a fully reporting issuer whose shares are traded on the OTC markets". It further provided that the Defendants were responsible to pay:

> "the costs associated with the acquisition of the public entity [which] was at a total cost of $60,000 (of which $38,500 ha[d by that time] been paid by the time of the Attorney-Client Agreement), which amount was in addition to $27,500 of legal fees necessary to accomplish same, or for a total of $87,500."

10. Additional services were chargeable by SCI to the Defendants, at the rate of $395 per hour of attorney time.

11. Billings and invoices issued by SCI to the Defendants included services rendered by SCI prior to the April 28, 2015 date of execution of the Attorney-Client Agreement.

12. The essence of the Attorney-Client Agreement was to bring Osceola Gold public by means of a reverse merger with Encounter Development Technologies Inc. (ENTI), a publicly traded entity.

3

13. Thereafter, on or about July 8, 2015, in order to better fulfill the needs of the Defendants, the parties, in addition to other parties, reached another agreement, the Mining Agreement, for Osceola Gold to instead go public through PhyHealth Corporation.

14. Among other things, the Mining Agreement required the Defendants to within 30 days thereafter do a registered spinoff from PhyHealth Corporation, and therefore to thereafter be a separate publicly traded company independent of PhyHealth Corporation, including:

> Fil[ing] a Form S-1 with the SEC, to become a separate fully reporting company, as a spinoff (the "Spinoff"), with a dividend paid to the existing shareholders, and pay all of the expenses incident thereto, including legal expenses, audits, SEC filings, FINRA, etc. Osceola shall prosecute that Form S-1 initiative, engaging legal counsel and a PCAOB accounting firm.

15. By July 8, 2015, when the Mining Agreement (Exhibit B) was executed, of the $87,500 as set forth in the Attorney-Client Agreement (Exhibit A), $55,000 had been paid by the Defendants. Of the $55,000, $37,500 was determined to be included in the services related to the public initiative, as per the Attorney-Client Agreement and therefore chargeable against the $87,500, leaving a balance due of $50,000 for the Specified Services. The $17,500 difference ($55,000 in payments minus the $37,000 credited toward the $87,500) in payments, was attributable to other services at the rate of $395 per hour and therefore not creditable against the $87,500 obligation.

16. Unfortunately, the Defendants never paid the legal fees necessary to comply with the obligations of the Spinoff and never otherwise performed the Spinoff transaction.

17. The Defendants therefore breached their obligations set forth in the Mining Agreement.

18. See Exhibit B, ¶ 2(i), expressly referencing the Attorney-Client Agreement and the $50,000 due to SCI thereunder, as of July 8, 2015.

19. In accordance with the terms of the Mining Agreement, the Defendant Osceola Gold agreed, among other things, "Upon the ordering of the stock transfer agent to issue to Pizz, the Control Block, Osceola shall pay SCI $50,000 due to SCI, in accordance with the April 28, 2015 Engagement Agreement...." Mining Agreement ¶ 2(i), Exhibit B.

4

20. The Control Block (defined as 76,500,000 shares of Phyhealth Corporation common stock) was ordered from the stock transfer agent and issued to Pizz.

21. However, the $50,000 was not paid to SCI, at least not in its entirety.

22. While the Defendants made payments to SCI, from time to time, as reflected in Exhibit C, the billing statements and invoices, the Defendants failed to make all the payments due pursuant to the Attorney-Client Agreement, including that $50,000 portion set forth in the Mining Agreement as having accrued to that date of July 8, 2015 (the Attorney-Client Agreement and the Mining Agreement collectively referred to herein as the "Agreements").

23. In accordance with the terms of the Agreements, SCI issued invoices to the Defendants, at the rate of $395 per hour of attorney time, plus costs.

24. As a courtesy, only the $395 per hour was invoiced, not the $87,500 for the Specified Services and then $395 per hour thereafter, as expressly called for in the Attorney-Client Agreement. Had SCI invoiced the $87,500 for the Specified Services and then invoiced $395 per hour thereafter, the amount of the invoices would have been substantially more than the $191,173.63 amount invoiced to the Defendants by SCI.

25. As of November 15, 2015, SCI issued an invoice to the Defendants for services rendered up until such date in the amount of $202,780.13, before credit for payment of $60,600.00, for a net amount due of $142,180.13 as of that date. Exhibit C.

26. As of March 19, 2016, SCI issued an invoice to the Defendants for additional services rendered up until such date in the amount of $50,893.50, before credit for payment of an additional $1,900. Exhibit D.

27. As a result of the foregoing, the total amount due from the Defendants, through March 19, 2016, is $191,173.63. Exhibit E.

28. Currently, $191,173.63 is due, cumulatively, through March 19, 2016, after credit for the $62,500.00 of total payments by the Defendants to SCI. Exhibit E.

5

29. Although the Defendants made payments of only $62,500.00, toward of total billings for services of $253,673.63 for a net of $191,173.63, the Defendants continued to assure SCI and its principals that payment would be made in full for SCI's legal services.

30. SCI demanded payment in full, for the $191,173.63 amount due.

31. The Defendants never provided an excuse to not compensate SCI for its legal services.

32. The Defendants never complained about SCI's legal services.

33. The Defendants promised to pay the $191,173.63 amount invoiced.

34. The Defendants have failed and refused to pay the one $191,173.63 legal fees due to SCI.

35. The Defendants have benefited from the legal services provided by SCI.

36. SCI performed all services required of it under the terms of the Agreements to receive the full amount of the $191,173.63 amount invoiced.

37. SCI assigned all rights related to its legal services in connection here with, to Randall S. Goulding.

38. The legal services performed by SCI for the Defendants were necessary.

39. As a result of the legal services performed by SCI, Osceola Gold is now a public company.

40. The fees and expenses charged by SCI were reasonable, considering the complexity of the results obtained and the experience of the attorneys involved.

41. Despite repeated demands by SCI for payment, the Defendants have accepted the benefits about SCI's services, but failed to pay SCI its outstanding balance of $191,173.63, through March 19, 2016.

### Count I - Breach of Contract

1 through 41. SCI adopts and realleges, and incorporates by this reference, paragraphs 1 through 41 as and for paragraphs 1 through 41 of Count I.

42. The parties agreed to the terms of the Agreements, that SCI would perform legal services and the Defendants would pay SCI the amount invoiced for such legal services.

43. SCI fully performed its obligations under the Agreements with the Defendants, required to receive the $191,173.63 amount invoiced.

44. The Defendants failed to perform its obligations under the Agreements it made with SCI, in breach of that Agreement.

45. Among other things, the Defendants have failed and/or refused to pay for the legal services it received from SCI, in accordance with the terms of the Agreements.

46. As a direct and proximate result of the Defendants' breach of the parties' Attorney-Client Agreement and, SCI has suffered damages, in the amount of $191,173.63.

WHEREFORE, SCI prays for entry of a judgment in its favor and against the Defendants, Osceola Gold and Pizz Inc., in the amount of $191,173.63, plus costs and for such other and further relief as this Honorable Court deems appropriate under the circumstances.

## Count II - Unjust Enrichment

1. From April 28, 2015 through September 11, 2013, SCI performed extensive legal services on behalf of the Defendants at a value of not less than $191,173.63.

2. The legal services provided by SCI to the Defendants have greatly inured to the benefit of the Defendants.

3. If the Defendants were permitted to retain the benefit of SCI' services without paying for them, the Defendants would be unjustly enriched at SCI's expense.

4. The value of SCI's services rendered on behalf of the Defendants was $253,673.63.

5. The Defendants paid only $62,500.00 of the $253,673.63 incurred and invoiced.

6. The Defendants made no more payments to SCI.

7. The value of the unpaid amount of SCI services on behalf of the Defendants is $191,173.63 as of the preparation and filing of this complaint, through March 19, 2016.

WHEREFORE, SCI prays for entry of a judgment in its favor and against the Defendants, Osceola Gold and Pizz Inc. in the amount of $191,173.63, plus costs and for such other and further relief as this Honorable Court deems appropriate under the circumstances.

### Count III -QUANTUM MERUIT

1. From April 28, 2015 through September 11, 2013, SCI performed extensive legal services on behalf of the Defendants.

2. The legal services provided by SCI to the Defendants have greatly inured to the benefit of the Defendants.

3. The Defendants accepted the legal services but failed to fully pay for the legal services.

4. The legal services provided by SCI to the Defendants, have a value of not less than $253,673.63. Of the $253,673.63 value, the Defendants paid only$62,500.00, leaving a net value of $191,173.63.

WHEREFORE, SCI prays for entry of a judgment in its favor and against Defendants and each of them, in the amount of $191,173.63, plus costs and for such other and further relief as this Honorable Court deems appropriate under the circumstances.

### Count IV - ACCOUNT STATED

1. From April 28, 2015 through September 11, 2013, SCI performed extensive legal services on behalf of the Defendants.

2. The legal services provided by SCI to the Defendants have greatly inured to the benefit of the Defendants.

3. The legal services provided by SCI to the Defendants, have a value of not less than $191,173.63.

4. SCI has issued invoices to the Defendants requesting payment for its legal services, in the amount of $191,173.63 (attached hereto as Exhibit C and Exhibit D).

5. Following their acknowledgment of receipt of Exhibit C and Exhibit D, the Defendants, and each of them, agreed to pay the $191,173.63 in full.

6. The Defendants, and each of them, promised to pay the $191,173.63 balance due, in full

7. However, the Defendants made no further payments to SCI.

WHEREFORE, SCI prays for entry of a judgment in its favor and against the Defendants, Osceola Gold and Pizz Inc. in the amount of $191,173.63, plus costs and for such other and further relief as this Honorable Court deems appropriate under the circumstances.

Dated: July 6, 2016

Respectfully submitted,
Randall S. Goulding

By: *[signature]*

Randall S. Goulding, *pro se*

Securities Counselors, Inc.
1333 Sprucewood, Deerfield, IL 60015, 847-948-5431
Randy@securitiescounselors.net
Attorney No. 10256190