IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RANDALL S. GOULDING, as assignee of the original Plaintiff, SECURITIES COUNSELORS, INC.,<br><br>         Plaintiff,<br><br>v.<br><br>OSCEOLA GOLD, INC. a Delaware Corporation, PIZZ INC., a Nevada Corporation,<br><br>         Defendants. | Case No. 1:16-cv-04860<br><br>Magistrate Judge Sidney I. Schenkier |

## ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Defendants Osceola Gold, Inc. and Pizz Inc., ("Defendants" and "Counter-Plaintiffs"), by and through their undersigned counsel, answer the numbered paragraphs in Plaintiff Randall S. Goulding's, ("Plaintiff" and "Counter-Defendant"), First Amended Complaint, Doc. No. 16, filed on July 6, 2016, as follows:

1. Lack sufficient information to form a belief as to truth or falsity.

2. Lack sufficient information to form a belief as to truth or falsity.

3. Deny.

4. Admit, except deny as to "purporting to be."

5. Lack sufficient information to form a belief as to truth or falsity, except Admit as to personal jurisdiction.

6. Admit.

7. Admit.

8. Deny.

1

9. Admit.

10. Deny.

11. Lack sufficient information to form a belief as to truth or falsity

12. Deny.

13. Lack sufficient information to form a belief as to truth or falsity, except Admit that there is a Mining Agreement.

14. Admit.

15. Deny.

16. Deny.

17. Deny.

18. No answer is needed.

19. Admit.

20. Admit.

21. Deny.

22. Deny.

23. Lack sufficient information to form a belief as to truth or falsity.

24. Lack sufficient information to form a belief as to truth or falsity.

25. Lack sufficient information to form a belief as to truth or falsity, except Admit that there is an Exhibit C.

26. Lack sufficient information to form a belief as to truth or falsity, except Admit that there is an Exhibit D.

27. Deny, except Admit that there is an Exhibit E.

28. Deny, except Admit that there is an Exhibit E.

29. Deny.

30. Lack sufficient information to form a belief as to truth or falsity.

31. Deny.

32. Deny.

33. Deny.

34. Deny.

35. Deny.

36. Deny

37. Lack sufficient information to form a belief as to truth or falsity.

38. Deny

39. Deny.

40. Deny.

41. Deny.

42. Deny.

43. Deny.

44. Deny.

45. Deny.

46. Deny.

1. Deny.

2. Deny.

3. Deny.

4. Deny.

5. Deny.

6. Deny.

7. Deny.

1. Deny.

2. Deny.

3. Deny.

4. Deny.

1. Deny.

2. Deny.

3. Deny.

4. Deny, except Admit that there are Exhibits C and D.

5. Deny.

6. Deny.

7. Deny.

### First Affirmative Defense
### Failure to State a Claim

Plaintiff has failed to state a claim on which relief may be granted.

### Second Affirmative Defense
### Plaintiff's Breach of Fiduciary Duties

Plaintiff had a fiduciary duty to Defendants based on Plaintiff's status as the attorney for Defendants. Plaintiff breached his duty by concealing material facts concerning his ability to practice before FINRA, his history as a convicted felon, and his ability to deliver the ENTI entity for use. By concealing these material facts, Plaintiff breached his fiduciary duty as an attorney of Defendants. Plaintiff's claims are barred as a result of his breach of his fiduciary duty as an attorney of Defendants.

4

### Third Affirmative Defense
### Unclean Hands

Plaintiff acted in bad faith when formulating the contract, namely, failing to disclose the extent and nature of his criminal records, and his ability to work with FINRA. Further, Plaintiff failed to disclose the extent and nature of his criminal record. By engaging in this concealment and omission, Plaintiff obtained the agreement by false pretenses. Accordingly, Plaintiff's claims are barred as a result of his unclean hands in the obtaining of the contract.

### Fourth Affirmative Defense
### Frustration of Purpose – Attorney Client Agreement

Defendants did not anticipate or create the change in circumstances, namely, that the corporate entity, ENTI, could not be delivered to Defendants as contemplated by the transaction. Neither did Defendants contribute to the circumstances. This failure to deliver frustrated the purpose of the Contract. Accordingly, Plaintiff's claims are barred as a result of the frustration of purpose of the contract.

### Fifth Affirmative Defense
### Frustration of Purpose – Mining Agreement

Defendants did not anticipate or create the change in circumstances, namely, that Plaintiff, due to his criminal background which limited his ability to deliver on the legal tasks in the agreement, could not deliver legal services to Defendants as contemplated by the transaction. Neither did Defendants contribute to the circumstances. This failure to deliver frustrated the purpose of the Contract. Accordingly, Plaintiff's claims are barred as a result of the frustration of purpose of the contract.

### Sixth Affirmative Defense
### Illegality – Mining Agreement

Plaintiff and Defendants entered into a contract to "rent" a publically traded vehicle for the purpose of making a new publically-traded vehicle after which the original vehicle would be returned to the original owners. This contract is an illegal contract under the Federal Securities laws as it is an illegal scheme to distribute. Plaintiff acted as legal advisor and attorney to Defendants. Plaintiff as a seasoned securities attorney knew or should have known that such a contract is illegal. Accordingly, Plaintiff's claims are barred as a result of the illegality of the contract.

### Seventh Affirmative Defense
### Fraudulent Inducement

Plaintiff misrepresented material facts to Defendants with respect to the availability of ENTI, the reporting status of PYHH, Plaintiff's status with FINRA, and Plaintiff's criminal record. These facts, individually and collectively, were material facts as to both the Attorney-Client Agreement and the Mining Rights Agreement. These material facts induced the Defendants to enter into not one, but two agreements for services with Plaintiff. Defendants reasonably relied on Plaintiff as their attorney; he garnered a position of trust and confidence. Accordingly, Plaintiff's claims are barred as a result of the contracts being obtained through fraudulent inducement.

### Counterclaim I
### Breach of Contract – Attorney-Client Agreement

1. Counter-Plaintiffs and Counter-Defendant entered in to a contract for Counter-Defendant to provide legal services in an effort to bring the mining project public as in the contract set forth as Doc. No. 20. (the "Attorney-Client Agreement").

2. Counter-Plaintiffs performed in all ways material to that contract.

6

3. Counter-Defendant failed to perform, as he was unable to complete the legal tasks agreed to, namely the reverse merger with Counter Development Technologies, Inc. ("ENTI"), name change, and the change of symbol and was unable to deliver ENTI without debts or lawsuits.

4. Counter-Defendant failed to perform on the Attorney-Client Agreement by not making the necessary filings with the Financial Industry Regulatory Authority ("FINRA") namely, the filings effectuating a reverse stock split, a name change, and a symbol change.

5. Counter-Defendant failed to perform on the Attorney-Client Agreement by not making the necessary filings to make the public company OTC Pink current with OTC Markets.

6. Counter-Defendant failed to perform on the Attorney-Client Agreement by not making the initial filings to obtain DTC eligibility.

7. Counter-Plaintiffs suffered damages attributable to the breach in an amount to be determined at trial, but not less than $5,000,000, and lost profits from being unable to operate the Mav-G mining claim due to their inability to raise the necessary funding to complete the physical plant.

## Counterclaim II
## Breach of Contract – Mining Agreement

1. Counter-Plaintiffs and Counter-Defendant entered into a contract for Counter-Defendant to provide legal services in an effort to bring the mining project public. See Doc 16-2, (the "Mining Rights/Stock Purchase Agreement").

2. Counter-Plaintiffs performed in all material ways.

3. Counter-Defendant failed to perform on the Mining Rights/Stock Purchase Agreement by failing to deliver a 1934 Act reporting company.

4. Counter-Defendant failed to perform on the Mining Rights/Stock Purchase Agreement by failing to make the necessary 1934 Act filings.

5. Counter-Plaintiffs suffered damages attributable to the breach in an amount to be determined at trial, but not less than $5,000,000, and lost profits from being unable to operate the Mav-G mining claim due to their inability to raise the necessary funding to complete the physical plant.

## Counterclaim III
## Fraud

1. Counter-Defendant made multiple misrepresentation of material fact, namely that he was an attorney in good standing with FINRA and that he was able to deliver the ENTI vehicle

2. These representations were false.

3. As a consequence of not being an attorney in good standing with FINRA, FINRA would not accept an opinion for a name change, symbol change, or reverse split.

4. As a consequence of not being able to deliver the ENTI vehicle, Counter-Plaintiffs paid money and wasted time, which prevented the mining project from opening and generating profits for Counter-Plaintiffs.

5. Counter-Defendant knew that the representation that he was in good standing with FINRA was false when made, as Counter-Defendant knew that he had been suspended from the practice of law for fraud against the United States in 1994 and was currently in litigation for securities fraud with the Securities and Exchange Commission.

6. Counter-Defendant knew that the representation that he was able to deliver ENTI was false, as he owed the owner of ENTI considerable sums of money and that the owner of ENTI would not deliver the vehicle without payment, which Counter-Defendant could not secure.

7. Counter-Plaintiffs justifiably relied on the representations of Counter-Defendant.

8. Counter-Plaintiffs suffered damages attributable to its reliance on the falsehood in an amount to be determined at trial, but not less than $5,000,000, and lost profits from being unable to operate the Mav-G mining claim due to their inability to raise the necessary funding to complete the physical plant.

## Counterclaim VI
## Fraud in the Inducement

1. Counter-Defendant misrepresented material facts to Counter-Plaintiffs with respect to the availability of ENTI, the reporting status of PYHH, Counter-Defendant's status with FINRA, and Counter-Defendant's criminal record.

2. Counter-Defendant's misrepresentations induced Counter-Plaintiffs to enter into the Attorney-Client Agreement and the Mining Rights/Stock Purchase Agreement.

3. Counter-Defendant is liable for the monies paid to him for services that were not possible for him to perform, for entities that he was not able to procure for Counter-Plaintiffs, and for lost profits attributable to the delay caused by his material misrepresentations.

4. Counter-Plaintiffs suffered damages flowing from the misrepresentation of material facts by Counter-Defendant in an amount to be determined at trial, but not less than $5,000,000, and lost profits from being unable to operate the Mav-G mining claim due to their inability to raise the necessary funding to complete the physical plant.

## Counterclaim V
## Fraudulent Concealment by Fiduciary

1. Counter-Defendant owed a fiduciary duty to Counter-Plaintiffs based upon his role as their attorney.

2. Counter-Defendant hid the material facts of his criminal past, his inability to work with FINRA, and his inability to obtain ENTI.

3. The concealment was intentional in order to defraud or mislead Counter-Plaintiffs as to his ability to execute on the tasks set forth in the Attorney-Client Agreement and the Mining Rights/Stock Purchase Agreement, respectively.

4. Counter-Plaintiffs reasonably relied on the misrepresentation and Counter-Plaintiffs suffered damage as a result of their reliance on Counter-Defendant's concealment of material facts in an amount to be determined at trial, but not less than $5,000,000, and lost profits from being unable to operate the Mav-G mining claim due to their inability to raise the necessary funding to complete the physical plant.

## Counterclaim VI
## Constructive Fraud in a Contract

1. Counter-Plaintiffs and Counter-Defendant entered into two contracts.

2. Counter-Defendant has made the above-referenced misrepresentations incorporated in the above-referenced paragraphs.

3. Counter-Defendant's statements were false as described above.

4. Counter-Plaintiffs reasonably relied on the misrepresentations and Counter-Plaintiffs suffered damage as a result of their reliance on Counter-Defendant's concealment of material facts and false statements in an amount to be determined at trial, but not less than $5,000,000, and lost profits from being unable to operate the Mav-G mining claim due to their inability to raise the necessary funding to complete the physical plant.

Dated: December 2, 2016

Respectfully submitted,

                                                      /s/ Joshua D. Brinen

Joshua D. Brinen
BRINEN & ASSOCIATES, LLC
7 Dey Street, Suite 1503
New York, New York 10007
(212) 330-8151 (Telephone)
(212) 227-0201 (Fax)
jbrinen@brinenlaw.com
Attorneys for Defendants